1

2

3

4 **UNITED STATES DISTRICT COURT**

5 **DISTRICT OF NEVADA**

6 * * *

7 JACQUELYNN BORTOLAMEDI,                    Case No. 2:17-cv-01473-JAD-BNW

8                       Plaintiff,
                                           **REPORT AND RECOMMENDATION**
9        v.

10 CAROLYN W. COLVIN, Acting
   Commissioner of Social Security,
11
                      Defendant.
12

13

14         The case involves review of an administrative action by the Commissioner of Social

15 Security ("Commissioner") denying Jacquelynn Bortolamedi's (Plaintiff's) application for

16 disability insurance benefits under Titles II and XVI of the Social Security Act. The court

17 reviewed Plaintiff's Motion for Judgment on the Pleadings (ECF No. 13), filed October 12, 2017,

18 and Defendant's Cross Motion to Affirm and Response to Plaintiff's Motion for Judgment on the

19 Pleadings (ECF Nos. 18, 19), filed January 29, 2018. Plaintiff replied on February 9, 2018. (ECF

20 No. 20.) This matter was referred to the undersigned magistrate judge on May 6, 2019 for a report

21 of findings and recommendations under 28 U.S.C. § 636(b)(1)(B)-(C) and Local Rule IB 1-4.

22 **I.        BACKGROUND**

23         **A.        Procedural History**

24         On January 6, 2014, Plaintiff applied for disability insurance benefits and supplemental

25 security income under Titles II and XVI of the Act, alleging an onset date of September 14, 2013.

26 AR[1] 194-195. The Commissioner denied Plaintiff's claims initially and upon reconsideration. AR

27

28 _____

[1] AR refers to the Administrative Record in this matter. (Notice of Manual Filing (ECF No. 12).)

126-130, 134-137. A hearing was then held before an Administrative Law Judge (ALJ) on August 17, 2015. AR 73-110. On December 17, 2015, the ALJ issued a decision finding Plaintiff was not disabled. AR 59-68. On January 7, 2016, Plaintiff requested that the Appeals Council review the ALJ's decision. AR 54. The Appeals Council denied this request on March 21, 2017, making the ALJ's decision the Commissioner's final decision. AR 1-7. On May 23, 2017, Plaintiff commenced this action for judicial review under 42 U.S.C. §§ 405(g). (See Compl. (ECF No. 1).)

**B.    The ALJ Decision**

The ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920.

At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity since September 14, 2013. AR 61.

At step two, the ALJ found that Plaintiff had the following severe impairments: bipolar disorder, panic disorder, and obesity. *Id.*

At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R., Part 404, Subpt. P, App. 1 (the listings). AR 62.

Next, the ALJ found Plaintiff retained the residual functional capacity (RFC) to perform a full range of work at all exertional levels with the following limitations: Plaintiff is limited to jobs with simple tasks with occasional contact with the public, coworkers, and supervisors. AR 63.

At step four, the ALJ found that Plaintiff could not perform past relevant work. AR 67.

At step five, and with the assistance of the vocational expert, the ALJ found that there were jobs existing in significant numbers that someone with Plaintiff's vocational profile could perform. AR 67-68. The ALJ therefore found Plaintiff "not disabled" as defined in the Act. AR 68.

## II.    DISCUSSION

### A.    Standard of Review

Administrative decisions in social security disability benefits cases are reviewed under 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) states:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides.

42 U.S.C. § 405(g). The court may enter "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.* The Ninth Circuit reviews a decision affirming, modifying, or reversing a decision of the Commissioner de novo. *See Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2004).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *see Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson*, 359 F.3d at 1193. When the evidence will support

more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Consequently, the issue before the court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence. It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. Mere cursory findings of fact without explicit statements as to what portions of the evidence were accepted or rejected are insufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). The ALJ's findings "should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based . . . ." *Id.* (citing *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974), cert. denied, 420 U.S. 931 (1975).).

### B.    Disability Evaluation Process

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of her claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See generally* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that he can make a finding of disability or nondisability, a determination will be made, and no further evaluation is required. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Step one requires the ALJ to

determine whether the individual is engaged in substantial gainful activity (SGA). 20 C.F.R. § 404.1520(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit. *Id.* § 404.1572(a)-(b). If the individual is engaged in SGA, then a finding of "not disabled" is made. *See Barnhart*, 540 U.S. at 24. If the individual is not engaged in SGA, then the analysis proceeds to step two. *See id.* Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities. 20 C.F.R. § 404.1520(c). An impairment or combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. *Id.* § 404.1521; *see also* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); SSR 85-28, 1985 WL 56856 (Jan. 1, 1985).[2] If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of "not disabled" is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairment or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the individual's impairment or combination of impairments meet or equal the criteria of a listing and the duration requirement (20 C.F.R. § 404.1509), then a finding of disabled is made. 20 C.F.R. § 404.1520(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four.

---

[2] SSRs constitute the SSA's official interpretation of the statute and regulations. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see also* 20 C.F.R. § 402.35(b)(1). They are entitled to some deference if they are consistent with the Social Security Act and regulations. *Id.* at 1223-24 (finding ALJ erred in disregarding SSR 82-41).

Before moving to step four, however, the ALJ must first determine the individual's residual functional capacity (RFC), which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. § 404.1520(e); *see also* SSR 96-8p, 1996 WL 374184 (July 2, 1996). In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and "the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a*); see also* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and 20 C.F.R. § 416.927.

Step four requires the ALJ to determine whether the individual has the RFC to perform her past relevant work (PRW). *See* 20 C.F.R. § 404.1520(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years before the date that disability must be established. *See* 20 C.F.R. §§ 404.1560(b), 404.1565(a). In addition, the work must have lasted long enough for the individual to learn the job and perform a SGA. *Id.* §§ 404.1560(b), 404.1565(a). If the individual has the RFC to perform her past work, then a finding of "not disabled" is made. *Id.* § 404.1560(b)(3). If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

The fifth and final step requires the ALJ to determine whether the individual can do any other work considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). If she can do other work, then a finding of "not disabled" is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Yuckert*, 482 U.S. at 141-42.

C.     **Analysis**

    1.     **Medical Opinion Evidence**

        i.     **Drs. Hodde and Austin's Opinions**

Plaintiff faults the ALJ for rejecting Drs. Hodde and Austin's opinions regarding the disabling nature of Plaintiff's conditions. (ECF No. 13 at 13-19.) Dr. Hodde was Plaintiff's treating psychiatrist, and Dr. Austin was Plaintiff's treating psychologist. (*Id.* at 14.) Generally speaking, both of these doctors opined, among other things, that Plaintiff would be unable or have difficulty working full time. *See* AR 368, Exs. 9F, 11F. These opinions were contradicted by state agency psychological consultants, Pamela Hawkins, Ph.D. and Joshua D. Schwartz, Ph.D., who both opined that Plaintiff's mental impairments were non-severe. AR 113, 122.

        ii.     **The ALJ's Decision**

The ALJ gave Drs. Hodde and Austin's opinions both "little weight." AR 65. The ALJ also considered the state agency psychological consultants' opinions and gave them "some weight," but ultimately determined that Plaintiff had greater limitations that what they concluded. *Id.*

        iii.     **When a Doctor's Opinion May Be Rejected**

"If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216. The specific and legitimate reason standard can be met by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, [the ALJ] stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725. However, "conclusory reasons will not justify an ALJ's rejection of a medical opinion." *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999); *see also Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988) (conclusory reasons do not "achieve the level of specificity" required to justify an ALJ's rejection of an opinion).

### iv. Whether the ALJ Erred in Rejecting Drs. Hodde and Austin's Opinions

#### a. Dr. Hodde

Dr. Hodde has been Plaintiff's treating psychiatrist since 2007. (ECF No. 13 at 14; AR 365.) The record contains many of her "Progress Notes" from appointments with Plaintiff, which contain detailed information about Plaintiff's reported symptoms, Dr. Hodde's mental status evaluations, diagnoses, and instructions/recommendations/plans for Plaintiff. *See, e.g.*, Ex. 7F. The record also contains a Mental Impairment Questionnaire that Dr. Hodde filled out about Plaintiff. AR 365-369. Based on Dr. Hodde's treatment relationship with Plaintiff, Dr. Hodde opined, among other things, that Plaintiff could carry out one-to-two step instructions but otherwise had moderate to marked limitations in her ability to function, including marked limitations[3] in her ability to maintain attention and concentration for extended periods, perform activities within a schedule and consistently be punctual, complete a workday without interruptions from psychological problems, perform at a consistent pace without rest periods of unreasonable length or frequency, interact appropriately with the public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them, maintain socially appropriate behavior, and respond appropriately to workplace changes. AR 65, 368.

The ALJ gave Dr. Hodde's opinion "little weight." AR 65. The only reason the ALJ gave for giving Dr. Hodde's opinion "little weight" was "[a]s discussed above, the record as a whole, including Dr. Hodde's own treatment notes, does not support a finding that the claimant's mental impairments are so severe as to be disabling." *Id.*

While the ALJ discussed Dr. Hodde's opinion elsewhere in the ALJ's decision, as discussed in this Report and Recommendation in more detail below, the ALJ's discussion is factually inaccurate and unsupported by the record.

---

[3] "Marked" limitations is defined as "[s]ymptoms constantly interfere with ability (Constant – more than 2/3 of an 8-hr. workday)." AR 368.

Accordingly, the ALJ's explanation for giving Dr. Hodde's opinion "little weight" ("[a]s discussed above, the record as a whole, including Dr. Hodde's own treatment notes, does not support a finding that the claimant's mental impairments are so severe as to be disabling") fails to meet the "specific and legitimate" standard for rejecting a treating doctor's opinion. *See, e.g.*, *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989) (an ALJ's rejection of a physician's opinion on the ground that it was contrary to clinical findings in the record was "broad and vague, failing to specify why the ALJ felt the treating physician's opinion was flawed.").

### b. Dr. Austin

Dr. Austin was Plaintiff's treating psychologist. (ECF No. 13 at 14.) Dr. Austin opined, among other things, that Plaintiff would have difficulty maintaining employment on a full-time basis. Exs. 9F, 11F.

The ALJ gave Dr. Austin's opinion "little weight." AR 65. The only reasons the ALJ gave for giving Dr. Austin's opinion "little weight" was (1) "[a]s discussed above, the record as a whole does not support a finding that the claimant's mental impairments are so severe as to be disabling" and (2) although Dr. Austin noted that she has been treating the claimant since November 2014, the record does not contain any evidence of this history of treatment. AR 65.

The ALJ's first conclusory reason for rejecting Dr. Austin's opinion fails to meet the specific and legitimate standard for rejecting a treating doctor's opinion for the same reasons it failed for Dr. Hodde. *See supra*.

The ALJ's second reason for rejecting Dr. Austin's opinion, that the record did not contain evidence of Dr. Austin's treatment history, also fails. By way of background, the record contains a letter from Dr. Austin noting that she's treated Plaintiff since 2014, and Plaintiff had attended a total of 18 therapy appointments since that time. AR 402. The letter also discusses Plaintiff's mental limitations and concludes that she will have difficulty working full time. *Id.* The record also contains a Mental Impairment Questionnaire that Dr. Austin completed regarding Plaintiff's condition and limitations. AR 409-413. The record does not contain any further records or treatment notes from Dr. Austin (relating to the Plaintiff's 18 appointments), which is the second reason the ALJ rejected Dr. Austin's opinion.

As Plaintiff correctly argues, the ALJ has a duty to fully and fairly develop the record. (ECF No. 13 at 16; *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).) This duty exists even when the claimant is represented by counsel. *Smolen*, 80 F.3d at 1288. Here, if the ALJ felt she needed to know more about the bases for Dr. Austin's opinions (beyond what was contained in her letter and Mental Impairment Questionnaire), she had a duty to conduct an appropriate inquiry. *See id.* (doctor filled out a questionnaire with yes-no answers regarding claimant's limitations but did not provide the bases for his answers; "[i]f the ALJ thought he needed to know the basis of [the doctor's] opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physicians or submitting further questions to them.") However, it was error to reject Dr. Austin's opinions on the grounds that the record of her treatment was not more fully developed. *See id.* (ALJ erred in rejecting doctor's opinion because he did not fully understand the bases for them when he also did not attempt to more fully develop the record).

Defendant argues that the ALJ did not err because Plaintiff's representative repeatedly represented to the ALJ at the hearing that all of Plaintiff's records had been submitted to the ALJ. (ECF No. 19 at 8.) However, Defendant does not provide any legal authority which would allow this court to conclude that Plaintiff's counsel's representations to the ALJ change the analysis. Accordingly, once the ALJ realized that the record of Dr. Austin's treatment was not fully developed, she was not permitted to simply reject Dr. Austin's opinion on this basis. Rather, she had a duty to develop the record, and her failure to do so was error.

Plaintiff argues that the ALJ's failure to properly credit Dr. Hodde and Dr. Austin's opinions resulted in an improper RFC-finding. (ECF No. 13 at 18-19.) Defendants do not argue that if the ALJ improperly rejected these opinions, it was harmless error. And on these facts, the court cannot conclude it was harmless error either. Had the ALJ accepted either Dr. Hodde or Dr. Austin's opinion, she likely would have concluded that Plaintiff was disabled. Accordingly, the ALJ erred in rejecting Drs. Hodde and Austin's opinions, and this error was not harmless.

### 2. Symptom Claims

#### i. Plaintiff's Appealed Symptom Claims

Plaintiff faults the ALJ for failing to rely on clear and convincing reasons supported by substantial evidence in discrediting her symptom claims. (ECF No. 13 at 19-25.) Plaintiff argues that the ALJ relied on the following four reasons to find her not entirely credible, and that each reason is flawed: (1) insufficient objective medical evidence existed that Plaintiff was disabled and that mental status evaluations revealed she appeared glum and wary with depressed thought content, and had a depressed mood and a blunted affect but "no other significant findings" (AR 63-64); (2) Plaintiff's symptoms improved with changes in medications but there was evidence of possible medication noncompliance (AR 64); (3) Plaintiff was able to perform some activities of daily living (AR 66); and (4) Plaintiff made inconsistent statements regarding her past alcohol use and ability to perform activities of daily living (AR 66). (ECF No. 13 at 20-21.)

### ii. When Symptom Claims May Be Rejected

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.[4] "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d

[4] SSR 96-7p, the regulation that governed credibility determinations at the time of this decision, was superseded by SSR 16-3p in March 2016. SSR 16-3p "eliminat[es] the use of the term 'credibility' .... [to] clarify that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, available at 2016 WL 1119029, at *1 (Mar. 16, 2016). However, both regulations require an ALJ to consider the same factors in evaluating the intensity, persistence and limiting effects of an individual's symptoms. *See id*. at *7; SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996).

1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *Thomas*, 278 F.3d at 958 ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.").

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

The court is constrained to affirming the ALJ decision on a ground that the ALJ invoked in making his/her decision. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Stout v. Comm'r, Soc. Sec. Admin*, 454 F.3d 1050, 1054 (9th Cir. 2006). The court cannot affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

### iii. Whether the ALJ Erred in Rejecting Plaintiff's Symptom Claims

Here, Plaintiff argues that the ALJ relied on four flawed reasons to find her not entirely credible. (ECF No. 13 at 20-21.)

First, the ALJ found that insufficient "objective findings" existed to support Plaintiff's allegations of disabling symptoms. AR 63. In support of this finding, the ALJ noted that mental status evaluations revealed Plaintiff appeared glum and wary with depressed thought content and had a depressed mood and a blunted affect but "no other significant findings." AR 63-64. However, as Plaintiff argues, this does not appear to be accurate. (*See* ECF No. 13 at 2-6, 21.) In just one Exhibit that the ALJ cited (1F), Dr. Hodde also noted Plaintiff had signs of anxiety (AR 343, 347, 350); poor social judgment (AR 343); wishes to be dead (AR 343); was agitated and very angry, had severe anxiety or panic, impaired impulse control, and rapid mood shifts (AR

343); continued to cycle rapidly between depressive and manic episodes (AR 347); was paranoid and had auditory hallucinations (AR 349, 350); and was diagnosed with bipolar disorder and panic disorder with agoraphobia. AR 340, 343, 347 350. Accordingly, the first reason the ALJ gave for discrediting Plaintiff's symptoms is not a clear and convincing reason, as it is factually inaccurate.

Second, the ALJ found that Plaintiff's symptoms improved with changes in medications but there was evidence of possible medication noncompliance. AR 64. Regarding improvement, the effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3); *see Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations). However, "treatment records must be viewed in light of the overall diagnostic record." *Ghanim*, 763 F.3d at 1164.

Here, the ALJ noted that Plaintiff reported (1) improvement in her sleep and mood, as well as decreased "symptoms" when she started taking Seroquel and (2) improvement with medication change in September 2014 and that she was more motivated and beginning to enjoy things. AR 64 (citing Exs. 2F/9-11, 7F/14-16 (medical records)). When these notes are read in light of the entire record (and even in the context of the medical records in which they appear), they do not provide substantial evidence to discredit Plaintiff's symptom testimony. *See, e.g.*, Exs. 1F, 2F, 3F, 4F, 7F, 8F, 9F, 10F, 11F (discussing Plaintiff's symptoms). Rather, they show that despite some occasional signs of improvement, Plaintiff continued to experience many symptoms related to her bipolar and panic disorders, including depression, hopelessness, low motivation, lack of interest in things, worthlessness, difficulty thinking, excessive fatigue, anhedonia, anxiety, difficulty making decisions, etc. *See, e.g.,* AR 379; *see also Holohan*, 246 F.3d at 1205 ("That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace.").

Regarding noncompliance, it is well-established that unexplained or inadequately explained non-compliance with treatment reflects on a claimant's credibility. *See Molina*, 674

1  F.3d at 1113-14. An ALJ may consider a claimant's unexplained or inadequately explained

2  failure to follow a prescribed course of treatment when assessing a claimant's credibility. *Smolen*,

3  80 F.3d at 1284.

4      Here, the ALJ noted several instances of possible medical noncompliance, but only one

5  instance is "unexplained" and verified by the record. The ALJ noted that in November 2013, Dr.

6  Hodde observed subtherapeutic levels of Plaintiff's medications. AR 64. However, Dr. Hodde

7  explained that "[d]espite consistently taking her medications," her blood levels are

8  subtherapeutic; this "is likely due to malabsorption stemming from her gastric bypass . . . ." AR

9  347. The ALJ also noted that in December 2013, Plaintiff's Depakote level was subtherapeutic.

10  AR 64. However, Dr. Hodde's notes provide, "Depakote level is very low . . . My goal is to

11  discontinue the Depakote in the future, she has not been absorbing it properly, does not reach

12  therapeutic level." AR 350. The ALJ also noted that Plaintiff admitted to misusing Klonopin in

13  February 2014. AR 64. This appears accurate from Dr. Hodde's notes. AR 354. The ALJ also

14  noted that Plaintiff did "best" when taking Depakote and citalopram but she refused to continue

15  taking Depakote. AR 64. It appears that Plaintiff's migraines were well controlled with this

16  medication, but Plaintiff stopped using it. *See* AR 380. As Plaintiff notes, however, the Depakote

17  was subtherapeutic even at high doses and did not appear to benefit Plaintiff. AR 355. The ALJ

18  also noted that Plaintiff reported in December 2014 that she had been drinking excessively, but

19  the ALJ did not provide a citation for this finding for the court to verify it. AR 64. Accordingly,

20  only Plaintiff's misuse of Klonopin in February 2014 is unexplained and verified by the record.

21      On these facts, the court cannot conclude that substantial evidence of medication

22  noncompliance exists to support the ALJ finding Plaintiff not credible based on noncompliance.

23      Third, the ALJ found that Plaintiff's ability to perform some activities of daily living was

24  inconsistent with her allegations of disabling symptoms. AR 66. The ALJ may consider a

25  claimant's activities that are inconsistent with reported symptoms. *Rollins v. Massanari*, 261 F.3d

26  853, 857 (9th Cir. 2001). If a claimant can spend a substantial part of the day engaged in

27  exertional or non-exertional functions, the ALJ may find these activities inconsistent with the

28  reported disabling symptoms. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Molina*, 674

F.3d at 1113. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13 (internal quotations and citations omitted).

Here, the ALJ noted that Plaintiff takes care of pets with her mother's help; does laundry; goes out once a day; can walk; attends church regularly; is able to follow written instructions very well and follow spoken instructions less well; assists her father with simple things when needed; prepares simple meals; vacuums and sweeps; takes care of little dogs (including feeding, bathing, and cleaning up after them); goes out once every month or two to eat; and drives once a week. AR 66 (citing Ex. 1E; AR 73-110 (Plaintiff's testimony)). These findings are supported by the record and undermine some of Plaintiff's statements about the disabling nature of her condition. "Although the evidence of [Plaintiff's] daily activities may also admit of an interpretation more favorable to [Plaintiff], the ALJ's interpretation was rational, and '[w]e must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.'" *Burch*, 400 F.3d at 680–81.

Fourth, the ALJ found that Plaintiff made inconsistent statements regarding her past alcohol use and ability to perform activities of daily living. AR 66. In evaluating a claimant's symptom claims, an ALJ may consider the consistency of an individual's own statements. *Smolen*, 80 F.3d at 1284. Regarding Plaintiff's alcohol use, the ALJ correctly noted that there appeared to be some inconsistency between Plaintiff's statement to Dr. Brown on July 21, 2015 that she last drank three weeks earlier (roughly July 1) (AR 404-405) and her statements to the ALJ on August 27, 2015 that she last drank "about" three months ago (roughly May 27). AR 84. Additionally, the ALJ noted that Plaintiff reported she could not drive, needed prompting to take care of her hygiene, and only performed limited chores, but testified inconsistently that she drove when necessary, did not mention any hygiene difficulties, and admitted to performing additional chores. AR 66. Plaintiff argues that these differences in abilities are consistent with her pattern of having greater limitations and being less active when depressed (versus being more active when

manic). (ECF No. 13 at 24.) However, Plaintiff provides no legal authority, citations to the record, or further analysis supporting this argument. Accordingly, the court cannot find that the ALJ erred in discrediting Plaintiff's symptom claims based on inconsistent statements.

Thus, the ALJ erred in some respects in discrediting Plaintiff's symptom claims, as discussed above, but this error is harmless. The ALJ gave additional clear and convincing reasons related to Plaintiff's activities of daily living and inconsistent statements (that were supported by substantial evidence) for discrediting Plaintiff's symptom complaints. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008); *Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record."); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (holding that any error the ALJ committed in asserting one impermissible reason for claimant's lack of credibility did not negate the validity of the ALJ's ultimate conclusion that the claimant's testimony was not credible).

### 3. Vocational Expert Testimony

#### i. Whether the ALJ Included All of Plaintiff's Limitations in Her Hypothetical

Plaintiff faults the ALJ for failing to include all of the mental limitations the ALJ found Plaintiff had in the hypothetical she gave to the Vocational Expert (VE). (ECF No. 13 at 25.) Specifically, the Plaintiff correctly notes that the ALJ found Plaintiff had moderate limitations in her ability to maintain concentration, persistence, and pace (AR 62), but did not include these in her hypothetical to the VE. *See* AR 101. Instead, the ALJ's hypothetical included only the following limitation: the person could only have occasional contact with the public, coworkers, and supervisors. *Id.* This was error. *See Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) ("If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.").

The question remains, however, whether this error was harmless. Defendants argue that it was, because all of the jobs the ALJ found Plaintiff could do based on the hypothetical have a Specific Vocational Preparation (SVP) level of 2. (*See* ECF No. 18 at 11, n.7; AR 101-102.) Defendants further explain that "unskilled work corresponds to an SVP of 1-2." (ECF No. 18 at 11, n.7; SSR 00-4p.) However, as Defendant notes, SVP levels are essentially a measure of the amount of time needed to learn a job. (ECF No. 18 at 11, n.7; 20 C.F.R. § 656.3 (SVP "means the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation"); 20 C.F.R. § 404.1568 ("Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.").) SVP levels do not say anything about whether a plaintiff with certain concentration, persistence, or pace limitations can perform a particular job. And as is particularly relevant here, neither the definition of SVP nor the definition of unskilled work provides that anyone with moderate limitations in concentration, persistence, and pace can perform SVP level 2 work or unskilled work.

Defendants also rely on *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008), to argue that the Ninth Circuit has held that an ALJ properly captures a claimant's moderate limitations in concentration, persistence, and pace by limiting the claimant to unskilled work. (*See* ECF No. 18 at 10-11.) However, *Stubbs-Danielson* is not directly on point. In that case, claimant argued that the ALJ's RFC finding did not capture claimant's concentration, persistence, and pace limitations. 539 F.3d at 1173. The RFC finding said nothing about concentration, persistence, or pace but limited the claimant to simple, routine work. *Id.* The Ninth Circuit explained that this was not error because multiple doctors observed issues with claimant's pace and one doctor further opined that despite these pace issues, claimant could carry out simple tasks. *Id.*

Here, however, the issue is not whether the ALJ's RFC finding accurately captured Plaintiff's limitations, but rather whether the hypothetical posed to the VE accurately captured Plaintiff's limitations. It did not. It neither included concentration, persistence, and pace limitations nor a limitation to simple work. *See* AR 101.

Nonetheless, the court reviewed the record to determine whether, like in *Stubbs-Danielson*, any doctor opined that Plaintiff had concentration, persistence, and pace limitations but could still perform simple work. If this were so, the ALJ's failure to include a limit to simple work or concentration, persistence, and pace limitations in her hypothetical may have been harmless error (because all of the jobs the VE opined Plaintiff could do involved unskilled work). However, the court was unable to find clear evidence in the record that a doctor who observed Plaintiff's concentration, persistence, and pace limitations also opined Plaintiff could perform simple work.[5] Accordingly, the court cannot find that the ALJ's error in failing to include concentration, persistence, and pace limitations in her hypothetical to the VE was harmless.

### 4. New Medical Evidence

#### i. Whether the Appeals Council Properly Rejected Medical Evidence

Plaintiff faults the Appeals Council for failing to consider new medical evidence Plaintiff submitted after the ALJ hearing. (ECF No. 13 at 26-28.) Specifically, the Plaintiff submitted a psychiatric evaluation and mental impairment questionnaire by Michael R. Madow, M.D. to the Appeals Council, dated September 22, 2016 and September 27, 2016, respectively. AR 10-11, 20-39, 40-44. The Appeals Council looked at these materials but found, "[t]he Administrative Law Judge decided your case through December 17, 2015. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before

---

[5] Dr. Hodde found that Plaintiff was able to carry out one to two-step instructions but otherwise had moderate to marked limitations in her ability to function. AR 368. In the same report, however, Dr. Hodde notes "marked" problems with Plaintiff's concentration and persistence, including her ability to "complete a workday without interruptions from psychological symptoms." *Id.* Thus, it is not clear that Dr. Hodde opined that Plaintiff can still engage in simple work. The ALJ also considered the opinions of Drs. Brown and Austin, but both opined that the Plaintiff would have difficulty working full time. AR 65. Finally, the ALJ considered the state agency doctors' opinions and gave them "some weight." *Id.* However, it does not appear that they opined on whether Plaintiff could perform simple work, and even if they had, both only found Plaintiff to have "mild" limitations in concentration, persistence, and pace (AR 114, 122) (whereas the ALJ found Plaintiff to have "moderate" limitations (AR 62)), so such an opinion would be of limited value.

1 December 17, 2015." AR 2. In other words, the Appeals Council found Dr. Madow's findings

2 irrelevant and did not consider how they might affect the ALJ's decision.

3 The Ninth Circuit "has specifically held that 'medical evaluations made after the

4 expiration of a claimant's insured status are relevant to an evaluation of the preexpiration

5 condition.'" *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995), *as amended* (Apr. 9, 1996); *see*

6 *also Svaldi v. Berryhill*, 720 F. App'x 342, 344 (9th Cir. 2017) (medical opinions given after

7 disability-period that refer to same chronic condition at issue in social security case and do not

8 indicate that there was a decline in claimant's condition over time must be considered); *Taylor v.*

9 *Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011) ("[I]f the Appeals Council

10 rejected [the doctor's] opinion because it believed it to concern a time after [claimant's disability-

11 period], its rejection was improper."). The Ninth Circuit has also specifically held that it is error

12 for the Appeals Council to not consider medical reports created after the disability-period. *Smith*

13 *v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988).

14 Here, the Appeals Council did not consider Dr. Madow's opinions because, in its words,

15 the "new information is about a later time." AR 2.

16 First, this is factually incorrect. Based on his review of Plaintiff's medical records and

17 evaluation of Plaintiff, Dr. Madow opined that Plaintiff's symptoms and related limitations

18 applied as far back as September 14, 2013 (Plaintiff's alleged onset date). AR 44, 194-195.

19 Second, the Appeals Council was required to consider this new information even if it did

20 not expressly state that Plaintiff had all the same symptoms and limitations during the disability-

21 period. *See, e.g.*, *Smith v. Bowen*, 849 F.2d 1222, 1226 (9th Cir. 1988) (citing *Hartman v.*

22 *Bowen,* 636 F.Supp. 129, 132 (N.D. Cal. 1986) with approval for the proposition that "although

23 plaintiff has to establish that disability existed prior to the expiration date she is 'not

24 confined . . . to evidence in existence prior to that date'"); *Svaldi*, 720 F. App'x at 344 (medical

25 opinions given after disability-period that refer to same chronic condition at issue in social

26 security case and do not indicate that there was a decline in claimant's condition over time must

27 be considered). Here, Dr. Madow opined about the same mental limitations that were at issue

28 before the ALJ (e.g., Plaintiff's bipolar disorder and concentration, persistence, and pace

limitations). *See* AR 20-39, 40-44 (Dr. Madow's opinions about Plaintiff's limitations); Exs. 1F, 2F, 3F, 4F, 7F, 8F, 9F, 10F, 11F (medical evidence before ALJ discussing similar mental limitations of Plaintiff). Accordingly, it was error for the Appeals Council to not consider Dr. Madow's opinions.

Defendant's assertion that "Dr. Madow's examining opinion simply cannot constitute [an] accurate longitudinal picture of Plaintiff's mental functional capacity" does not change the analysis. (*See* ECF No. 18 at 9.) While the amount of time a doctor spends with a patient could be a reason to give that doctor's opinion less weight, it is not a justification for failing to consider it altogether. *See Lester*, 81 F.3d at 832. The Appeals Council was required to consider Dr. Madow's opinion and failed to do so.

"Where the Appeals Council was required to consider additional evidence, but failed to do so, remand to the ALJ is appropriate so that the ALJ can reconsider its decision in light of the additional evidence." *Taylor*, 659 F.3d at 1233. As such, this court recommends that this case be remanded to the ALJ to consider its decision in light of Dr. Madow's opinions.

## III.     CONCLUSION AND RECOMMENDATION

Accordingly, IT IS THEREFORE RECOMMENDED that Plaintiff's Motion for Judgement on the Pleadings (ECF No. 13) be GRANTED IN PART and DENIED IN PART. It is GRANTED to the extent the court recommends remanding this case for further proceedings and DENIED in all other respects.

Accordingly, IT IS FURTHER RECOMMENDED that this case be REMANDED for further proceedings regarding Dr. Hodde and Dr. Austin's opinions, the vocational expert's testimony, and Dr. Madow's opinions.

IT IS FURTHER RECOMMENDED that the Commissioner's Cross Motion to Affirm and Response to Plaintiff's Motion for Judgment on the Pleadings (ECF Nos. 18, 19) be DENIED.

## IV.     NOTICE

This report and recommendation is submitted to the United States district judge assigned to this case under 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation

may file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: August 27, 2019


BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE